[L. A. No. 1209.    Department Two.—March 19, 1904.]

CHARLES B. BOOTHE, Appellant and Respondent, v. SQUAW SPRINGS WATER COMPANY, Respondent and Appellant.

CONTRACT FOR PUMPING OUTFIT—INSUFFICIENCY—AGREED MODIFICATION —SUBSTITUTED PUMP-HEAD—INCREASED COST NOT RECOVERABLE— SUPPORT OF FINDING.—Where a pumping outfit, furnished under contract, was found insufficient for the service, and it was agreed that the outfit should not be considered as complete until a different and stronger pump-head should be furnished as a substitute for the first, and that the use of the plant in its insufficient condition should not be considered an acceptance, in the absence of any express contract of defendant to pay for the substituted pump-head, and of any evidence from which such contract can be implied, a finding that the new pump-head was by the mutual agreement and understanding of plaintiff and defendant to be furnished without additional cost to the defendant is sufficiently sustained.

ID.—PERFORMANCE OF CONTRACT—LIABILITY FOR PRICE—FINDINGS.—In view of the agreed modification of the original contract, and plaintiff's substantial compliance with the contract as modified, and that the pumping outfit, as changed, did the work called for, defendant cannot escape liability to pay the original contract price on the ground that the original contract was not performed as originally agreed; and the defendant is not injured by a finding that "plaintiff duly performed all the conditions on his part to be performed under the terms of the contract," nor by the apparent inconsistency with the finding that a substituted pump-head of a different pattern was agreed upon, without additional cost to defendant.

ID.—CROSS-COMPLAINT—DAMAGE FOR DELAY—EXCLUSION OF EVIDENCE. —Where the first pump-head and machinery were completed according to the contract, so far as the workmanship and pattern were concerned, but the pump proved too weak, and it was agreed that a new and stronger pump-head of a different pattern should be substituted, and the delay in making such substitution was not unreasonable, and the court was justified in finding that there was no unreasonable or unnecessary delay, the defendant cannot recover any damages for delay under a cross-complaint therefor, and was not injured by the exclusion of evidence upon that subject.

CROSS-APPEALS from a judgment of the Superior Court of Los Angeles County, and distinct appeals from distinct orders denying a new trial to the plaintiff and to the defendant.    N. P. Conrey, Judge.

The facts are stated in the opinion.

L. L. Cory, and Alva E. Snow, for Squaw Springs Water Company.

McKinley & Graff, for Charles B. Boothe.

CHIPMAN, C.—Plaintiff, by an amended complaint, sets forth two causes of action: First, an action on a written contract, dated April 9, 1898, at Los Angeles, to furnish to defendant a certain pumping outfit complete, near Johannesburg, California, including certain extra material in addition to that mentioned in said contract, also for board of man while engaged in erecting the plant, and alleges a balance of $793.31 to be due, with interest from August 15, 1898; second, that after the completion and acceptance of said pumping-plant, at defendant's request, plaintiff "changed said plant by taking out the one O. M. A. deep-well pump-head and otherwise changing said original plant so contracted for, and furnished the labor and material necessary for said change on or before November 11, 1898," valued at $854.97, for which judgment is asked.

Defendant admits the execution of the written contract referred to in plaintiff's complaint, denies that plaintiff erected the plant in accordance therewith, denies that the alleged change in the plant was made at defendant's instance, and alleges that such changes were made by plaintiff at his own instance in an endeavor to make said plant comply with the written contract; alleges, by way of counterclaim, and also a cross-complaint, mutual mistake in the contract, in its not providing for a definite time within which the plant should be completed, and that the agreement was that it should be completed within thirty days, which, it is alleged, was a reasonable time; alleges great and unnecessary delay in erecting the plant; that said pump was not delivered until July 7, 1898, and proved entirely insufficient, in consequence of which plaintiff undertook to and did, at his own instance, make changes in the original plan without defendant's consent, thus causing further delay; that the new plant did not comply with the terms of the contract, and that the pump as constructed on this latter plan was also insufficient; alleges

damages of one thousand dollars, by reason of these delays
and the failure of plaintiff to comply with his said contract.

The court found the facts to be true as alleged in plain-
tiff's first cause of action. As to the second cause of action,
that the said new pump-head pumping-plant was erected, but
"was by the mutual agreements and understanding of
plaintiff and defendant to be furnished without additional
cost to defendant therefor"; that there was no mutual mis-
take of the parties to the written contract; "but said contract
contained all the conditions agreed upon by plaintiff and
defendant, that plaintiff furnished said pumping-plant on
July 7, 1898, at which time it was placed in position ready
for operation, and all the other allegations in said second para-
graph of said counterclaim are untrue."

Judgment passed for plaintiff on his first cause of action.
with interest from August 15, 1898. Both parties appeal
upon the same transcript from the judgment and from the
order denying the motion of each for a new trial.

### PLAINTIFF'S APPEAL.

Plaintiff's contention is, that the evidence does not sustain
the finding that the pump-head and other material furnished
by plaintiff as a substitute for the first was to be furnished
without additional cost to defendant. Without considering
the somewhat significant fact that the original complaint made
no mention of anything due from defendant for the material
substituted for certain parts of the first pump erected, there
is much evidence tending to show that the substitution as
alleged in defendant's answer was resorted to by plaintiff on
his own initiative to make the plant do the work it was
originally inadequate to perform. The first plant was in-
stalled on July 7th, and when put to the test broke down in
some of its parts, and at the suggestion of plaintiff's expert,
Mr. Futhey, who was sent to erect the pump, plaintiff began
the construction of a different and stronger pump-head, and
after two months' or more delay the new pump was installed.
Subsequently, on October 6, 1898, plaintiff sent defendant a
statement of his account, and in it he made no reference to
any claim for the substituted machinery. Upon Mr. Futhey's
return to Los Angeles, after it was found that the first pump
was insufficient for the service, plaintiff wrote defendant,

July 9, 1898, "that he had ordered a heavier pump to be got just as quickly as possible by the factory," and about July 14th wrote defendant he had signed the agreement sent him by defendant, providing that the pumping-plant being furnished by him to defendant "is not to be considered completed until the heavier castings and bearings now being constructed are furnished and in place, and that the use of the plant in its present condition is not to be considered acceptance thereof by said company" (defendant). There is no evidence of any express contract on defendant's part to pay for this work, nor is there, in our opinion, evidence from which any contract to do so can be implied. The utmost effect that can be given to the evidence is, that the new pump-head and other appliances were to make good the deficiencies of the first pump.

We conclude that the finding of the court complained of by plaintiff is justified by the evidence.

### DEFENDANT'S APPEAL.

Defendant claims that there is no evidence to support the finding in favor of plaintiff's first cause of action. The written contract was in the form of a proposal by plaintiff, accepted by defendant. Some of its provisions should be stated, and are as follows: "We [plaintiff] herewith propose to furnish you [defendant] a pumping-plant to be erected on your property . . . to consist of the following described machinery which is intended to be a complete pumping-plant . . . [describing it in detail and including "one O. M. A. deep well power pump-head of our own design"], all to be erected in complete working order at the above-described place. It is agreed that we furnish one skilled man to take charge of the erection of the engine and pump." Defendant was to convey this expert and his tools from Johannesburg to Squaw Springs, board him while there, and return him with his tools to Johannesburg "on completion of the plant." Defendant was also to furnish foundation for engine and pump. The contract further provided: "We guarantee that the above-described plant will be of the capacity to deliver ninety (90) gallons of water per minute continuously (if necessary amount is in the well), lifting it not exceeding 100 feet to the surface of the ground, and delivering it through 1,640 feet of 4-inch interior diameter iron pipe to a

point 450 feet above the surface of the ground at the well. We also guarantee the machinery in this plant against all defects in material and workmanship. The price to be paid for above described plant, when erected, as specified is," etc.

Defendant contends that there was a material and radical change made in the pump-head without its consent, and that in fact plaintiff never did erect the plant called for by the contract, and hence the court was not justified by the evidence in finding, as alleged in the complaint, that "plaintiff completed the erection of said pumping-plant in complete working order . . . in accordance with said proposal, . . . and plaintiff duly performed all the conditions on his part to be performed under the terms of said contract." And defendant claims that there is an inconsistency between this finding and the further finding "that the change of pump-head " mentioned in plaintiff's second cause of action, and "the labor and material furnished by plaintiff to defendant in changing said pumping-plant was by the mutual agreements and understanding of plaintiff and defendant to be furnished without additional cost to defendant therefor." The fact is not disputed that the second pump-head was of an entirely different type from the first, and strictly the evidence does not support the finding that plaintiff completed the plant in accordance with the original written contract. But the second cause of action, as well as defendant's answer and cross-action, called for the finding which introduced the alleged inconsistency in the findings. There was no objection to any evidence as not within the issues, and if it be true, as we think is shown by the evidence, that both parties agreed to the modification in the pump-head and the changes made necessary by it, defendant was not injured by the finding although not strictly justified. And for like reason also it may be said to be immaterial whether the written contract called only for a plant of a certain kind, as contended by plaintiff, and did not call for its having a certain working capacity. Both parties agreed to modifications which changed the original agreement in respect to some of the parts of the plant, and in this subsequent agreement it was provided that the plant "is and will not be completed so as to be turned over to [defendant] for ac-

ceptance until all heavy castings and bearings belonging to said plant are in proper place and the whole plant is in perfect working order.''

It appears from the evidence that after the first test was made and the machinery gave out, Mr. Futhey returned at once to Los Angeles to have a stronger and different pumphead made. Before going, however, he strengthened the weak parts of the pump temporarily, so that defendant could use the pump, and it did use it. And it was to show that this use was not to be regarded as an acceptance that the supplemental. agreement before referred to was made, and this agreement shows that defendant must have known that some changes were to be made.

It also appears that after the new pump-head was put in and the plant was reconstructed to some extent, defendant used it and some time later (the date does not appear) a new corporation was formed, to which this plant with all other of defendant's property was transferred. Defendant did in fact make some objection to the new pump-head as not the kind originally ordered, and as being less convenient to operate in some respects, but defendant did nothing, and its manager, Mr. Colson, said nothing from which plaintiff could understand otherwise than that the plant was accepted. And there is evidence that it did the work called for. There were occasional breakdowns in minor parts, but no such failure of the plant to do the work occurred, or was at the time claimed to have occurred, as would justify defendant to retain and use the plant and still refuse to pay the balance due on the original contract.

It is claimed by the defendant that the court erred in refusing to allow proof of what Futhey said was the cause of the breakdown when the first test was made. Plaintiff claims that he was not such agent of plaintiff as would make his statement admissible. We do not think it necessary to decide the question. Whatever the cause of the failure, it becomes immaterial in view of the subsequent conduct of the parties already noticed.

Defendant also complains that it was not allowed to prove the damage set up in its counterclaim and cross-complaint. The first pump-head and machinery were completed in accordance with the contract and its specifications, so far as the

workmanship was concerned. This is not seriously disputed. The pump proved to be too weak in some of its parts and gave out, and it was then agreed that stronger parts should be substituted, and this was done, the defendant meanwhile using the pump. As to the "negligence and want of care exercised by the plaintiff in the selection of material for said plant and the manner in which it was placed in position," alleged by defendant as ground for damages, we think there were facts shown justifying the court in holding that such ground was not well laid. The principal reason for claiming damages seemed to be the alleged "long and unnecessary delays occasioned by the wanton negligence and want of care of the plaintiff in his compliance with the terms of the contract." As we have seen, the first plant was just what the parties agreed to have erected. There was, however, considerable delay in installing it, and defendant was damaged by this delay. Defendant complained by numerous letters of this delay, and plaintiff in reply endeavored to excuse it. The court found in effect that there was no unreasonable or unnecessary delay in finding that defendant's allegations were untrue. We have read all the numerous letters that passed between the parties. When considered, together with facts appearing elsewhere, we cannot say the trial court was not justified in its findings. There was evidence sufficient to justify the trial court in concluding that if there was delay that might have been avoided it was excused by defendant. Then, too, there was in fact a new contract entered into by which a different pump-head was to be used. It may be fairly inferred from the evidence as to this feature of the case that, so far as any claim might be made for previous delay, it was waived by defendant, if indeed it had any longer anything to rest upon.

We think the evidence taken in its entirety rendered the question of damages for delay immaterial, and that defendant was not injured by its exclusion. If all this evidence had been admitted, it would have gone for naught in view of the court's finding that there was no unreasonable delay.

It is advised that the judgment and the order denying the motion for a new trial be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the appeal from the judgment and from the order denying the motion for a new trial are affirmed.

Henshaw, J., McFarland, J., Lorigan, J.

Hearing in Bank denied.